## NIEDHAMER v CINCINNATI STREET RAILWAY CO.

Common Pleas Court, Hamilton Co.

No. A-67931. Decided Nov. 18, 1940.

Ginocchio & Ginocchio, Cincinnati, for plaintiff.

Leo J. Brumleve, Jr., Cincinnati, for defendant.

### OPINION

By SCHWAB, J.

This matter is before this court upon the petition for a writ of habeas corpus by Doctor Louis Feid, Jr., who represents that he is imprisoned and restrained of his liberty by the sheriff of Hamilton County, Ohio, without any legal authority, but under the color of a pretended commitment to the county jail by Dorothy Bernard, a notary public in and for Hamilton County, Ohio, on a finding by the notary that the doctor was guilty of contempt in refusing to answer questions propounded to him

by counsel during the taking of his deposition in this case.

The plaintiff in this case has filed her amended petition against The Cincinnati Street Railway Company seeking damages for injuries she claims she sustained while a passenger on a street car of the defendant company on or about the fourteenth day of May, 1938, which injuries, she complains, was the direct result of the negligence of the defendant company.

To her amended petition the defendant has filed its answer admitting that the plaintiff was a passenger on one of its cars on the day in question, but denies each and every other allegation.

On April 22, 1940, one of the judges of this court upon motion of the defendant for an order requiring the plaintiff to submit her person to a physical examination by physicians chosen by defendant, ordered and adjudged that plaintiff present herself for such examination to two competent physicians chosen by the defendant upon agreement with counsel for plaintiff at a suitable time and place. The order also provided that the plaintiff might have her own physician or physicians in attendance at such examination. It is agreed that Dr. Louis Feid, Jr., was one of the examining physicians in attendance to make a physical examination of the plaintiff pursuant to the court's order.

Following the examination counsel for the plaintiff took the deposition of sundry witnesses and called for examination Dr. Louis Feid, Jr., and interrogated him with reference to the examination of the plaintiff. The following three questions were propounded to the doctor:

"Q. 1. What was the nature and extent of that examination?
"Q. 2. Doctor, will you kindly state what your examination disclosed?
"Q. 3. Doctor, will you state what your findings were, if any, from this physical examination of the plaintiff?"

The doctor refused to answer the questions and was thereupon found guilty by the notary and committed to the county jail.

The question for this court to determine is whether or not, under the circumstances, the doctor was in contempt in refusing to answer the questions propounded. It is urged by counsel for the defendant, The Cincinnati Street Railway Company, that the doctor, in making the examination, was acting as the agent for the defendant company in preparation of its defense and that therefore the opinion be held as the result of his physical examination of the plaintiff was confidential. It is not urged that the relation of patient and physician existed between the plaintiff and the examining physician, nor is it urged the examination constituted a confidential communication between the plaintiff and the physician.

A number of old English cases are cited in support of the defendant's contention. In the case of Cossey and wife v The London, Brighton & South Coast Railway Company, decided January 31, 1870, and reported in The Law Reports, Common Pleas, Vol. 5, p. 146, wherein it was held:

"That the reports of the medical officer were privileged; and that the plaintiffs were therefore not entitled to have inspection of them."

In the case of Skinner v The Great Northern Railway Company, reported in The Law Reports, Common Law Exchequer Vol. 9, p. 298, the rule announced in the Cossey case was followed, the syllabus reading as follows:

"Where an accident occurs on a railway, and the officials of the company in the course of their ordinary duty make a report to the company, whether before or after action brought, the report is not privileged. But when a claim has been made, and the company seek to inform themselves by a medical examination as to the condition of the person making the claim, the report made to them is privileged."

It has been held in this state that reports made to the defendant in the

course and preparation of its defense by its agents are confidential, but the case at bar presents in the opinion of the court an entirely different question. Here the physician is asked to state what his examination disclosed, not what his report to the defendant disclosed. The court has compelled the plaintiff, prior to the trial of her case, to testify by submitting her body for examination by the physician employed by the defendant.

No reported cases directly bearing upon this question have been cited. However, in the case of State ex rel Berge v Superior Court, in and for King County, reported in 281 Pac. Rep. 335, the court holds:

"Where plaintiff, in action for personal injuries, voluntarily submitted to examination by doctor employed by defendant, the doctor could thereafter be called as witness and interrogated, not only as to facts which he discovered on examination, but also as to opinion as to nature and extent of injury without compensation other than ordinary witness fees."

In the case of Osborn v City of Seattle, reported in 252 Pac. Rep., p. 164, the court holds in Syl. 3, as follows:

"In actions for damages caused by collision between street car and automobile, testimony for plaintiffs by doctor, called by defendant's claim department. Held admissible; information obtained by doctor when giving physical examination not being confidential."

At page 166, the court in its opinion says:

"No case has been cited, and we know of no authority, which would sustain a holding that a person who voluntarily submits to an examination by a doctor, even though the examination was made at the instance of the adverse party, may not call that doctor as a witness upon the trial and interrogate him relative to the examination. This case is entirely different from that of seeking by interrogatories to get possession of the report which the doctor may have made to the person employing him. When the respondents voluntarily submitted to the examination, it naturally would be upon the implied assumption that they might call the doctor as a witness upon the trial if they saw fit to do so. To suppress such evidence in many cases would keep out of the trial facts which the court or the jury should know in order that a just determination of the cause might be had. Reason at least supports the right of the respondents to call the doctor in the present case and take his testimony relative to the examinations which he made."

This court, therefore, reaches the conclusion that the plaintiff had the right to propound the questions above referred to and the refusal to answer the same constituted a contempt. The doctor may purge himself of this contempt by answering these questions otherwise the commitment shall prevail.